UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a corporation existing
under the laws of the United States,

        Plaintiff,        CASE NUMBER: 13-12441
                                  HONORABLE VICTORIA A. ROBERTS
v.

ROYAL MANOR APARTMENTS, LLC.,
A Michigan limited liability company,

        Defendant/Counter Plaintiff.
_____/

**ORDER DENYING FANNIE MAE'S MOTION TO DISMISS (DOC. #21) AND
GRANTING ROYAL MANOR'S MOTION FOR SUMMARY JUDGMENT (DOC.#20)**

**I.    INTRODUCTION**

This is a mortgage foreclosure action; Defendant Royal Manor Apartments, LLC ("Royal Manor") does not dispute that foreclosure was legal: Royal Manor defaulted by not making the final payment, but timely redeemed the property after Federal National Mortgage Association ("Fannie Mae") filed its Complaint seeking injunctive relief and appointment of a receiver.

This dispute centers on the redemption price paid by Royal Manor, which it says was unreasonably higher than the default amount.

Fannie Mae says the Late Charge provision, "any other amount payable under this Note[,]" reasonably applies to the maturity payment, thereby entitling Fannie Mae to apply $84,761.82 in additional fees to the outstanding balance. Fannie Mae also

1

contends that post sale, but pre-redemption Net Operating Income ("NOI") payments totaling $29,219.84 remitted by Royal Manor may be applied to Fannie Mae's attorneys' fees, rather than to the redemption balance. Finally, Fannie Mae says that the Default Interest provision allowed it to increase the interest rate in addition to the late charge, adding an additional $24,377.91 to the balance.

After redeeming the property, Royal Manor filed a four count counterclaim and now seeks summary judgment on its counterclaim to recover what it says was an excessive redemption amount. By stipulation and agreement, Royal Manor agreed to dismiss Counts III and IV of its counterclaim, Counts I and II remain. Fannie Mae agreed to dismiss its Complaint without prejudice (Doc. #24), but seeks dismissal of Royal Manor's remaining counterclaim.

Fannie Mae's motion to dismiss Royal Manor's counterclaim is **DENIED**. Count I seeks to recover monetary damages for attorneys' fees paid and alleged overcharges to the redemption amount; Count II seeks a declaratory judgment that the alleged overcharging of the redemption amount breached the parties' contract.

Royal Manor's allegations in Count I of its counterclaim are sufficient to state a breach of contract claim. Count II is **MOOT**; Royal Manor only pled this claim as an alternative to Count I, and Royal Manor's motion for summary judgment on Count I is **GRANTED**.

There is no genuine fact dispute; Royal Manor is entitled to $122,008.37. While the Loan Documents did authorize Fannie Mae's application of the late charge, the late charge is unreasonable as applied. Further, the Loan Documents did not authorize Fannie Mae's application of NOI payments to attorney fees.

## II.  BACKGROUND

Royal Manor signed a Note and Mortgage Agreement to purchase a multifamily property for $2 million dollars.  The Note called for Royal Manor to make monthly installment payments, which were primarily interest, and a single maturity payment towards the remaining principal.  The maturity payment also included interest.

Royal Manor defaulted on its mortgage with Fannie Mae by failing to pay the maturity payment, which was $1,687,701.78 principal balance and $42,516.96 interest, on March 1, 2013; up until that point, Royal Manor timely made all monthly $11,658.75 installment payments over 10 years.

On March 11, 2013, Fannie Mae demanded full payment; but, it agreed to discuss forbearance of the debt on the condition that Royal Manor sign a Pre-Negotiation  Agreement that:

(1) required Royal Manor to make NOI payments:

> As a demonstration of Borrower's interest in a potential forbearance arrangement for the Loan, and understanding that Fannie Mae reserves all of its rights and remedies, Borrower agrees to either: (a) continue to remit to Services an amount equal to the pre-maturity, monthly payment under the Loan Documents plus the default interest due each month or (b) remit to Servicer, no less frequently than monthly, all of the net operating income from the Property ("NOI"), as defined below.

(2)  specified that Fannie Mae could apply the NOI payments to attorneys' fees:

> Fannie Mae may use the funds provided by Borrower in any order and for any purposes which is related directly or indirectly to the Loan Documents or to the Property including, without limitation, the payment of attorneys' fees or other charges incurred by Fannie Mae, application to principal or interest due under the note evidencing the Loan, payment for repairs or capital expenditures for the Property, or any other purpose determined by Fannie Mae in its sole and absolute discretion **and** in accordance with the Loan Documents.

(3) provided that the loan was fully due and authorized Fannie Mae to seek remedies under the Loan Documents:

> Borrower hereby acknowledges that the Loan has matured and is fully due, Borrower is in default under the Loan Documents and that Fannie Mae is entitled to exercise any and all rights and remedies set forth in the Loan Documents, at law or in equity.

On March 21, 2013, Royal Manor signed the Pre-Negotiation Agreement.

A permanent agreement was not reached; in May, 2013, Fannie Mae began foreclosure proceedings. On June 6, 2013, Fannie Mae filed suit requesting appointment of a receiver and a preliminary injunction. The supporting motions were filed on June 7, 2013.

On June 28, 2013, Fannie Mae submitted an Affidavit of Amounts of $1,740,860.42. Royal Manor requested justification of the amount; Fannie Mae provided an explanation.

On July 9, 2013, Fannie Mae purchased the property for $1,740,860.42. This bid included the principal, interest, default interest, late charge and fees and costs; it was reduced by escrow funds. Fannie Mae charged a 5% late charge to the outstanding balance owed at maturity; this increased the outstanding balance by $84,761.82. Fannie Mae then applied the default interest rate to the balance, increasing the loan interest rate by 4% for a total of $24,377.91. Fannie Mae's bid did not include attorneys' fees, other than the $75 statutory fee under MCL 600.2431(2)(c).

After the sale, Royal Manor continued to make NOI payments as agreed during a conference call with the Court.

On August 15, 2013, Royal Manor redeemed the property for $1,758,527.22. The redemption amount was calculated the same as the bid, but included extra days of the default interest rate.

Fannie Mae says the Late Charge provision in the mortgage allowed it to apply the fees:

> If any monthly installment due hereunder is not received by Lender on or before the 10th day of each month or if any other amount payable under this Note or under the Security Instrument or any other Loan Document is not received by Lender within 10 days after the date such amount is due, counting from and including the date such amount is due, Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to 5 percent of such monthly installment or other amount due.

This is the Default Rate provision that Fannie Mae says allowed it to increase the interest rate:

> So long as any monthly installment or any other payment due under this Note remains past due for 30 days or more, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due, as applicable, at a rate (the "Default Rate") equal to the lesser of 4 percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate.

No reduction to the redemption amount was made for the NOI payments. NOI payments, totaling $29,219.84, were not applied to the balance of the loan; they were credited to Fannie Mae's attorneys' fees. And, Fannie Mae says the Note allowed it to apply NOI payments to attorneys' fees:

> Borrower shall pay on demand all expenses and costs, including fees and out-of-pocket expenses of attorneys and expert witnesses and costs of investigation incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or

5

> to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

Royal Manor says that it overpaid by $122,008.37: ($29,219.84 (NOI payments) + $84,761.82 (late charge) + $8,026.71 (*pro rata* default interest fee) = $122,008.37). Royal Manor says that the $29,219.84 in NOI payments made after the sale should have been applied to the redemption value, not attorneys' fees. Royal Manor says that the 5% late charge does not apply to the maturity date payment; thus, it is owed $84,761.82. While Royal Manor does not dispute that the 4% increase in interest rate was proper, it argues that it was overcharged $8,026.71 because the balance included the NOI payments and the 5% tacked on to the maturity date payment ($29,219.84 + $84,761.82 = $113,981.66) for the period between sale and redemption. Fannie Mae does not dispute these calculations.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss (Fannie Mae)

Fed. R. Civ. P. 12(b)(6) dismissal is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). The court treats all well-pleaded allegations in the complaint as true. *Id.* However, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must include in the complaint enough facts which allow the court to

6

"draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2010).

### B. Summary Judgment (Royal Manor)

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

## IV. ANALYSIS

### A. FANNIE MAE'S MOTION TO DISMISS

#### 1. Count I

In Count I of its counterclaim, Royal Manor seeks recovery for what it says was an excessive redemption amount. Royal Manor says that under the contract: (1) the Late Charge provision is ambiguous and not applicable to the maturity payment, and (2) if the Late Charge is applicable to the maturity payment, it is a penalty by law.

Fannie Mae says that Count I of Royal Manor's counterclaim should be dismissed "because Fannie Mae's actions were expressly authorized by the

unambiguous terms of the written Loan Documents." Fannie Mae's Motion to Dismiss, Doc. 21 at 6.

Whether a contract is ambiguous is a question of law. *Craib v. Committee on Nat'l Missions of the Presbytery of Detroit of the United Presbyterian Church*, USA, 62 Mich. App. 617, 620; 233 N.W.2d 676 (1975).

In deciding a motion to dismiss for failure to state a claim, all a court need determine is whether the allegations are sufficient to put a party on notice.

Royal Manor properly pled breach of contract. To state a breach of contract claim, Royal Manor must plead: (1) that there was a contract, (2) that the opposing party breached the contract and, (3) that the complaining party suffered damages as a result of the breach. *Stevenson v. Brotherhoods Mut. Benefit*, 312 Mich. 81, 90–91, 19 N.W.2d 494 (1945); *Residential Ratepayer Consortium v. Pub. Serv. Comm.*, 198 Mich.App. 144, 149, 497 N.W.2d 558 (1993).

Count I of Royal Manor's counterclaim alleges:

Fannie Mae breached the Loan Documents by:

    a.    Calculating its foreclosure bid to include a 5% penalty, amounting to $84,761.82, denominated as a late charge, on the entire principal and interest balance due at maturity;
    b.    Calculating the statutory redemption price by using the default interest rate for a period following the foreclosure sale; and
    c.    Failing to credit Royal Manor for payments made, pursuant to the terms of the Pre-Negotiation Agreement, after foreclosure sale, and using those payments to cover attorney fees and other charges purportedly incurred in this litigation and in the foreclosure proceedings, for most (if not all) of which Fannie Mae was not entitled to reimbursement . . . [and]

Fannie Mae should be required to reimburse Royal Manor for the amount that Royal Manor overpaid to redeem the Property and Royal Manor

should be credited for all payments made under the Pre-Negotiation Agreement following the foreclosure sale.

First Amended Verified Answer, Affirmative Defenses and Counterclaim to Plaintiff's Verified Complaint, ¶ 60.

These allegations are sufficient to put Fannie Mae on notice. Fannie Mae's motion to dismiss Count I of Royal Manor's Complaint for failure to state a claim is denied.

### 2. Count II

Count II requests a declaratory judgment that the Late Charge, if applicable to the maturity payment, is a penalty that must be stricken from the Note.

Fannie Mae argues that Count II is duplicative of Count I, since in Count I, the Court must determine whether the provision is enforceable. Alternatively, Fannie Mae argues that a declaratory judgment is not the appropriate remedy because the purpose of a declaratory judgment is to clarify legal rights without an adversary suit.

Royal Manor says this claim is pled as an alternative method of recovery; if it prevails on Count I, it cannot -- and does not wish to -- recover under Count II.

Since Royal Manor prevails under Count I, Count II is necessarily dismissed as moot.

### B. ROYAL MANOR'S MOTION FOR SUMMARY JUDGMENT

#### 1. The Late Charge Provision

##### i. The Late Charge Does Apply to Maturity Payments

The Late Charge provision specifies that:

If any monthly installment due hereunder is not received by Lender on or before the 10th day of each month or if ***any other amount payable under***

9

>  ***this Note*** or under the Security Instrument or any other Loan Document is not received by Lender within 10 days after the date such amount is due, counting from and including the date such amount is due, Borrower shall pay to Lender, immediately and without demand by lender, a late charge equal to 5 percent of such monthly installment or other amount due.

Royal Manor does not dispute that: (1) the maturity payment is "any other amount payable under the Note," and (2) on its face, the Late Charge provision appears to apply to the maturity payment.

Rather, Royal Manor says that the Late Charge provision is ambiguous because it seems to apply to the maturity payment when it actually does not. Royal Manor says that the Loan Documents, when read in their entirety, explicitly establish that the maturity payment is exempt from the late charge.

A contract term is not ambiguous simply because opposing parties urge different meanings. *Henderson v. State Farm Fire and Casualty Co*, 460 Mich. 348, 355, n. 3, 596 N.W.2d 190 (1999). Rather, a contract is ambiguous when it is subject to multiple interpretations*. Meagher v. Wayne State Univ*, 222 Mich. App. 700, 722; 565 N.W.2d 401 (1997).

Rules of interpretation require courts to analyze the whole document when construing terms. Indeed, the goal of contract interpretation is to enforce the parties' intent of the contract. *Keller v. Paulos Land Co*, 5 Mich. App. 246, 255-256; 146 N.W.2d 93 (1966), aff'd 381 Mich. 355; 161 N.W.2d 569 (1968). All parts and every word of a contract should be considered and harmonized as far as possible. Contract terms cannot be considered in isolation. *Hastings Mut Ins Co v. Safety King, Inc*, 286 Mich. App. 287, 297; 778 N.W.2d 275 (2009).

There is no ambiguity; a complete reading of the Note shows that "any other amount payable" as stated in the Late Charge provision, includes the maturity payment. The only payments under the Note are installment and maturity. If the late charge applied only to the installment payments, the phrase "any other amount payable" would be mere surplusage. "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Associated Truck Lines v. Baer*, 346 Mich. 106, 110 (1956). The Note specified "any other amount payable," and a logical reading establishes that the late charge applies to all payments, i.e., the installment and maturity.

Despite the express language of the Note, Royal Manor argues that the phrase "all other amounts payable under this Note" is redundant, superfluous and has no meaning, by drawing a parallel between the Late Charge provision and the Acceleration Clause in the Note.

**The Acceleration Clause**: "If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable . . ., if any, and ***all other amounts payable under this Note*** . . . shall at once become due. . . .

Royal Manor says that because the sentence immediately before "all other amounts payable" in the Acceleration Clause explicitly lists all amounts that could become due on default, the "all other amounts payable" sentence and others identical to it, have no meaning elsewhere in the Note. Royal Manor's argument that no meaning

11

can be assigned to the phrase "all other amounts payable" anywhere in the contract is not persuasive.

**The Default Interest provision**: "So long as *a monthly installment or any other payment due* under this Note remains past due for 30 days or more, interest . . . shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due . . . .," reads exactly like the Late Charge provision. Royal Manor concedes in its brief that the default interest rate applies to the maturity payment, thereby assigning meaning to "any other payment due" in the Default Interest provision, even though it is not listed in the same fashion as the Acceleration Clause.

While Royal Manor agues that the Default Interest provision is distinguishable from the Late Charge because it goes on to expressly reference "principal balance[,]" this distinction is irrelevant. The later reference to principal has no bearing on which kinds of payments the default interest applies to.

Both installment and the maturity payments include principal. The installment payments, while mostly interest, did have a portion of interest: "Consecutive monthly installments of principal and interest, each in the amount of Eleven Thousand Six Hundred Fifty Eight and 75/100 Dollars (US $ 11,658.75)." The maturity payment was primarily principal.

The Default Interest provision only says "principal" to clarify that although a missed payment may be a mixture of interest and principal, e.g., either installment or maturity, the default interest is only applicable to the principal, not the interest bearing

portion of the default.  It is specifically clear not to compound interest on interest.  A full reading of the Default Rate provision defeats Royal Manor's point.

In reading the Loan Documents in their entirety, there can be only one reasonable meaning of the Late Charge provision: it applies to installments and the maturity payment.

### ii. The Late Charge is Unreasonable

If the Late Charge provision applies to the maturity payment, Royal Manor says that the Late Charge provision, coupled with the Default Interest provision is a penalty. Royal Manor asks the Court to strike the Late Charge provision.

Whether a liquidated damage provision is a penalty is a question of law and will be upheld if it is reasonable. *Solomon v. Dep't of State Hwys & Transp*, 131 Mich. App. 479, 484; 345 N.W.2d 717 (1984).  "[A] liquidated damages provision is invalid if it is, in fact, a penalty."  *Shore Fin. Serv. v. Lakeside Title and Escrow Agency*, 301143, 302707, 302723, 2013 Mich. App. LEXIS 875, 2013 WL 2223781, at *3 (Mich. Ct. App. May 21, 2013)(citing *Moore v. St Clair Co*, 120 Mich. App. 335, 339-341; 328 N.W.2d 47 (1982)).

The Michigan Court of Appeals held that permitting a 5% late fee on a maturity payment is reversible error while "agree[ing with the Sixth Circuit] . . . that standard commercial practice imposes service charges for nonpayment of periodic installments, not in the principal balance owed at maturity."  *Green v. Trowbridge 1, Inc.*, No. 230349, 2003 Mich. App. LEXIS 1616, at *7-8 (Mich. Ct. App. July 1, 2003)(quoting *In re Brunswick Apartments of Trumbull Co*, Ltd, 169 F.3d 333 (6th Cir. 1999)).

*Brunswick*, a Sixth Circuit Bankruptcy appeal, adopted the holding of *In re Consol. Properties Ltd. P'ship*, 152 B.R. 452, (Bankr. D. Md. 1993), which said "a voluntarily contracted late charge that attempts to provide for the expected and unexpected costs a secured creditor may incur upon default by a debtor may be allowed as reasonable, provided it is not combined with a claim for default interest." *Id.* at 458.

Fannie Mae argues these cases contain non-binding *dicta*. However, the Michigan Court of Appeals in *Trowbridge 1, Inc.* found these cases persuasive. And, Fannie Mae does not direct the Court to contrary authority which addresses both a late charge and default interest as a penalty.

The Court finds the above authority persuasive. The installments were $11,658.75; the maturity payment $1,687,701.78; 5% of $11,658.75 is far less than 5% of $1,687,701.78, which increases the loan amount by approximately $100,000, as opposed to approximately $600 on an installment payment. Additionally, the default interest was applied to this maturity payment because it was primarily principal. This added an additional $25,000 to the redemption value. The total equates to roughly a year of interest on a 30 day late payment; it is a penalty.

The Late Charge provision is stricken from the Loan. Fannie Mae was not entitled to apply the late charge and default interest to the maturity payment.

### 2. NOI Payments Made After Foreclosure Should Reduce Redemption

Royal Manor argues that by stipulation, it agreed to continue to remit its NOI income to Fannie Mae after the foreclosure sale. Those payments amounted to $29,219.84. Royal Manor argues that Fannie Mae erroneously applied the NOI

14

payments to buy down Fannie Mae's $41,000 legal fees; however, the payments should have reduced the redemption price.

Fannie Mae argues that it rightfully applied the NOI payments to attorneys' fees as authorized by the Loan Documents.

To the extent Fannie Mae argues the Pre-Negotiation Agreement authorized attorneys fees, it is wrong. The Pre-Negotiation Agreement was entered into on March 18, 2013, and remained effective until the foreclosure sale. NOI payments were made after the sale, and by then, the Pre-Negotiation Agreement was not the controlling document; Michigan's foreclosure statute then controlled.

The Note conditions payment of attorneys' fees only on demand: "Borrower shall pay on demand all expenses and costs, including fees and out-of-pocket expenses of attorneys . . . ." Fannie Mae never made a request for attorneys' fees. Rather, Fannie Mae, at its own discretion and without notice or demand, applied NOI payments to attorneys' fees.

Royal Manor submits evidence showing that after Fannie Mae filed the Affidavit of Amounts on June 28, 2013, Royal Manor emailed Fannie Mae asking for an explanation of the amount. Fannie Mae did not explain its calculation until closing on August 15, 2013, at redemption.

Further, Fannie Mae did not file a motion for attorneys' fees. Typically when a note and mortgage call for the payment of costs and reasonable attorneys' fees incurred by the mortgagee in collecting or enforcing payment of a note, a plaintiff files a motion to enforce the agreement. The burden is on the party seeking payment to show that the

15

fees are reasonable. *Trowbridge 1, Inc.*, 2003 Mich. App. LEXIS 1616 at *9. The nonmoving party does not have the burden to disprove the amount. *Id.*

The NOI payments were improperly applied to attorneys' fees.

### 3. Default Interest

Royal Manor disputes the calculation of the outstanding balance and says that Fannie Mae incorrectly calculated the default balance between the foreclosure sale and redemption period, "causing Royal Manor to pay a 4% higher interest rate than required." Royal Manor's Motion for Summary Judgment, Doc. 20 at 35. Royal Manor says that this time period should exclude the amount for NOI payments and the late charge balance.

The Court has already held that the late charge does not apply to maturity payments and NOI payments were improperly applied to attorneys' fees.

Royal Manor presents evidence that it overpaid by $8,026.71; Fannie Mae does not dispute Royal Manor's damages calculation.

Royal Manor is entitled to $8,026.71 for the 4% interest charged on the $113,981.66 dollars which should have been excluded from the calculation from the period between foreclosure sale and redemption.

## IV. CONCLUSION

Fannie Mae's motion to dismiss Count I is **DENIED**. Royal Manor's motion for summary judgment on Count I is **GRANTED**. There is no genuine fact dispute, Royal Manor is entitled to $122,008.37. While the Loan Documents authorized Fannie Mae's application of the Late Charge, it is unreasonable. And, the Loan Documents did not authorize Fannie Mae's application of NOI payments.

16

In light of the Court's decision to grant summary judgment in Royal Manor's favor on Count I, Count II is dismissed as **MOOT**. Fannie Mae's motion to dismiss Court II for failure to state a claim is **DENIED**.

By stipulation, the parties agree to **DISMISS** Fannie Mae's Complaint and Counts III and IV of Royal Manor's counterclaim.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 29, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 29, 2014.

S/Carol A. Pinegar
Deputy Clerk